JABEZ D. BEARDSLEE, Appellant, *v.* NEW BERLIN LIGHT
   AND POWER COMPANY, Respondent.

Real property — deed — "reservation" and "exception"
defined and distinguished — grantee not estopped from denying
the efficacy of a reservation or exception — exception made in
statutory foreclosure by mortgagee, in favor of a stranger, is
invalid.

1. When the owner of a whole tenement divides the same and
conveys or mortgages a portion, the parties are presumed to con-
tract with reference to the condition of the property at the time,
and neither has the right by alteration to change materially the
value of the respective parts.

2. A reservation is always of something taken back out of that
which is clearly granted, while an exception is of some part of the
estate not granted at all. A reservation or exception must be con-
strued strictly against the grantor in favor of the grantee, but a
reservation or exception in favor of a stranger to a conveyance is
void or inoperative.

3. A grantee under a deed containing a reservation or exception
is not estopped from denying the efficacy of such exception or reser-
vation. Moreover an exception made on a statutory foreclosure by
a mortgagee is of no validity or efficacy in favor of a stranger since
the mortgagee has no estate in the mortgaged property and can sell
only to realize on the debt and in the manner prescribed by statute.
(*Sherman* v. *Willett*, 42 N. Y. 146, distinguished.)

*Beardslee* v. *New Berlin Light & Power Co.*, 140 App. Div. 942,
reversed.

(Argued December 5, 1912; decided December 20, 1912.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the third judicial department,
entered April 6, 1911, affirming a judgment in favor of
defendant entered upon a decision of the court on trial at
Special Term.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*James E. Norton* and *Arthur W. Morse* for appellant.
The reservation and exception contained in the printed

notice of sale, and in the affidavit of the auctioneer, measure all flowage rights to which said forty acres are subject. (*Blackman* v. *Striker*, 142 N. Y. 555; *Bridger* v. *Pierson*, 45 N. Y. 603; *Hinckel* v. *Stevens*, 165 N. Y. 171; *W. P. Iron Co.* v. *Reymert*, 45 N. Y. 703.) An exception or reservation in a deed is to be taken most favorably to the grantee, and if there is uncertainty or ambiguity in the language, he should have the benefit of the doubt or ambiguity. (*Mitchell* v. *Reid*, 192 N. Y. 255; *Meyers* v. *Bell Tel. Co.*, 83 App. Div. 623; *Grafton* v. *Moir*, 130 N. Y. 465; *Duryea* v. *Mayor, etc.*, 62 N. Y. 592; *Matter of Mayor*, 80 App. Div. 618; *Henderson Est. Co.* v. *Carroll El. Co.*, 99 N. Y. Supp. 365; *Jackson* v. *Hudson*, 3 Johns. 375; *Blackman* v. *Striker*, 142 N. Y. 555; *Shinnecock, H. & P. B. R. Co.* v. *Aldrich*, 132 App. Div. 120; *Johnson* v. *Sirrett*, 155 N. Y. 57.) The plaintiff is entitled to the injunction demanded in the complaint. (*Amsterdam Knitting Co.* v. *Dean*, 13 App. Div. 43; 162 N. Y. 278; *Lloyd* v. *Thompson*, 60 N. Y. Supp. 72; *Townsend* v. *Bell*, 62 Hun, 306; Angell on Water Courses, § 449; Gould on Waters, § 513; *Brown* v. *O. T. Co.*, 81 App. Div. 273; *Peck* v. *Schenectady R. R. Co.*, 179 N. Y. 298; *Gray* v. *New York State Tel. Co.*, 92 App. Div. 89; *Paige* v. *Schenectady R. R. Co.*, 77 App. Div. 571; *Craig* v. *Rochester & B. R. R. Co.*, 39 N. Y. 404.)

*H. C. Stratton* for respondent. The respondent is now the owner of all the rights of flowage owned by Daniel Ross in his lifetime both as to the factory property and the forty acres in dispute. (*Sherman* v. *Willett*, 42 N. Y. 151; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Simmons* v. *Cloonan*, 81 N. Y. 557; *Mattes* v. *Frankel*, 157 N. Y. 608.) The plaintiff by receiving his title subject to the right to flow the land in question, is estopped from denying the existence of such right in the owner of the Ross factory property. (*Lyon* v. *Adde*, 63 Barb. 89; *Freeman* v. *Auld*, 44 N. Y. 50; *Hopkins* v. *Wooley*, 81 N. Y. 77;

*Knickerbocker Ice Co.* v. *G. S., etc., R. R. Co.,* 85 App. Div. 530; *Newton* v. *Newton,* 52 App. Div. 96; *Dean* v. *Benn,* 142 N. Y. 684; *Mattes* v. *Frankel,* 157 N. Y. 607.) The defendant has the right to maintain the dam at its present height, and flow the lands above the same, to the extent the same were flowed at the time of the commencement of this action. (*Paine* v. *Chandler,* 134 N. Y. 385; *Welsh* v. *Taylor,* 134 N. Y. 450.)

CULLEN, Ch. J. The plaintiff is the owner of a tract of land in the county of Otsego, on Unadilla river, in this state, which at this point divides the counties of Otsego and Chenango. The defendant erected and has maintained a dam across the river by which the plaintiff's lands had been flooded. This action was brought to compel the defendant to lower the height of the dam and refrain from flooding the plaintiff's lands. The trial court found that the plaintiff had owned and been in possession of the lands described in the complaint ever since the year 1900; that in 1901 a dam which had been maintained on the river for a great number of years was carried away and a new dam built by the defendant in the place thereof, which is twenty-six inches higher than the old dam, by which the water overflows two parcels of the plaintiff's farm one of 40 acres and the other $2\frac{12}{100}$ acres. An injunction was awarded with respect to the $2\frac{12}{100}$ acre piece, but denied as to the 40-acre piece. From so much of the judgment as denied the injunction with respect to the 40-acre tract the plaintiff appealed. The judgment was unanimously affirmed by the Appellate Division and from that affirmance an appeal has been taken to this court.

The determination of the controversy depends on the rights of the parties under certain conveyances. It is unnecessary to go back of the title of one Daniel Ross, who owned the mill and tracts on each side of the river, which included the 40-acre parcel. He died intestate in

1864. In 1865 his infant children and heirs at law, by their special guardian, conveyed the property to one William N. Clinton by two deeds, one embracing the land in Otsego county, including the 40 acres already mentioned, and the other embracing the land on the Chenango side, including the mill. On these conveyances Clinton executed two mortgages to secure part of the purchase money. The deed of the Otsego county property does not appear in the record and the mortgage does not describe the lands as subject to any easements or rights whatever. The deed of the Chenango property contains a description by metes and bounds and concludes: "It being the factory lands and premises connected therewith in the Town of New Berlin belonging to Daniel Ross at the time of his death." The deeds and mortgages of the two pieces of property seem to have been given at the same time. Default having been made in the payment of the Otsego county mortgage it was foreclosed by advertisement and the property sold on July 16th, 1870. The notice of sale contained this provision: "The said lands and premises will be sold subject to the right to flow the same by keeping the dam to the Ross Factory pond to the same height that said Daniel Ross, deceased, kept the same or had the right to keep the same in his lifetime, and said right to flow is hereby to be reserved to any and all persons who may own the said water privilege." The affidavits filed state that "said sale was so made excepting and reserving the right to any and all persons who may at any time hereafter own the water privilege heretofore connected with the Ross factory in New Berlin Village to flow said premises to the same extent that Daniel Ross had the right to flow the same, when living, and to flow the same and keep the dam to the height mentioned and stated in said printed notice, and reserving all rights mentioned in said printed notice, and as there stated." But the record does not show that any particular height of the dam was stated in the notice of sale or otherwise.

The title to the mill property subsequently, through several mesne conveyances, vested in the defendant. The foundation of its title is a mortgage for the sum of $5,000 executed by said Clinton to one Burditt on February 4th, 1870. This mortgage was foreclosed by advertisment and the mortgaged premises sold on October 6th, 1870. It covered thirty-six acres of land situated in Chenango county describing the same with appurtenances and reciting, "it being the factory and lands and premises connected therewith in the town of New Berlin, and belonging to said Daniel Ross at the time of his death." When Clinton mortgaged the factory property to Burditt there was a severance of the two properties, and, doubtless, there was subjected to the lien of the mortgage and passed under the foreclosure thereof all the mill privileges and water rights that were appurtenant to the factory in the then existing condition of the property. The rule is well established that when, the owner of a whole tenement divides the same and conveys or mortgages a portion, the parties are presumed to contract with reference to the condition of the property at the time, and that neither has the right by alteration to change materially the value of the respective parts. (*Lampman* v. *Milks*, 21 N. Y. 505; *Simmons* v. *Cloonan*, 47 N. Y. 3.) Therefore, the plaintiff's land was presumptively subject to such burdens as the exercise of the mill privilege then existing would entail upon it. This proposition the plaintiff concedes, but claims it was subject to no greater burden. What were the extent of the rights of flowage that existed at the time of the mortgage and passed under it the trial court has not found, but has based its decision on the reservation or exception on the foreclosure sale of the Otsego county property. It held that as Daniel Ross in his lifetime owned the forty-acre tract he had, as owner, the right to flow it to any extent, and as the plaintiff traced his title to the tract through the sale which was made reserving or excepting the right of the owner of the water power

to flood the land to the same extent as Daniel Ross in his lifetime could, the defendant thereby also acquired the right to flow it to any extent.

We do not concur with the courts below in the interpretation of the reservation. The rule is that a reservation or exception must be construed strictly against the grantor in favor of the grantee. The only value of the land was for agricultural purposes. The right of flowage contended for by the defendant would seem to make the land practically worthless, yet it brought $2,340 on the foreclosure sale, which it is hardly possible would have been paid for it had the parties interpreted the reservation as broadly as is now claimed. We will not pursue the discussion further since it is doubtful whether the question is sufficiently raised in the record before us, and under familiar rules of law the reservation is of no avail to the defendant for other reasons.

It is elementary law, stated in every text book on the subject, that a reservation or exception in favor of a stranger to a conveyance is void or inoperative. (Washburn on Real Property, § 2354; Devlin on Deeds, § 979; *Pearson* v. *Hartman*, 100 Penn. St. 84; *Wadsworth* v. *Smith*, 11 Me. 278; Fowler's Real Property [2d ed.], 186; Sheppard's Touchstone, 80.) There is, however, this difference between the two things. A reservation is something taken back from what has been granted, but that which is excepted is not granted at all. Relying on this distinction the counsel for the respondent contends that the terms of the sale created an exception, not a reservation, and that the right to have the land immune from flowage except to the extent caused by the old dam never passed to the purchaser. There are two answers to this claim. Despite of the language employed it was a reservation, not an exception, which was created by the terms of the sale. The distinction between the two is pointed out by Judge SELDEN, quoting Sheppard's Touchstone, in *Craig* v. *Wells* (11 N. Y. 315, 321): " ' A reserva-

tion is a clause in a deed, whereby the grantor doth reserve some *new thing* to himself out of that which he granted before. This doth differ from an exception, which is ever part of the thing granted, and of a thing *in esse* at the time: but this is of a thing newly created, or reserved out of a thing demised, which was not *in esse* before.' It will be seen, therefore, that a reservation is always of something taken back out of that which is clearly granted; while an exception is of some part of the estate not granted at all." (See, also, 4 Kent's Commentaries, 468.) All the authorities are to the same effect. Therefore, the only easement that could be excepted on the sale of the mortgaged land was one existing before the sale, not one created thereby. This appears clearly by the case of *Bridger* v. *Pierson* (45 N. Y. 601). There the defendant conveyed to the plaintiff a tract of land "reserving always a right of way, as now used, on the west side of the above-described premises," etc., with the usual covenants. A third party, one Reeves, sued the plaintiff to establish a right of way over the premises. The suit, notice of which had been given to the defendant, went against the plaintiff, who thereupon sued his grantor for a breach of the covenants. The reservation was held to be an exception. It was there said: "Reeves not being a party to this deed, could not acquire any right of way or other interest in the land by virtue of any reservation or exception contained in it. (*Hornbeck* v. *Westbrook*, 9 Johns. 73; *Craig* v. *Wells,* 1 Kern. 315, 323.) But Reeves did not claim this right under the deed. The record shows that he established his right by an adverse user for more than twenty years prior to the giving of the deed by the defendant to the plaintiff." (p. 603.) The second answer is this: As expressly found by the trial court the plaintiff was and had been from before the acts of the defendant complained of in possession of the land. The defendant's acts, unless justified, constituted a trespass on the premises. As against one in possession, an intruder

must justify his invasion by virtue of his own title, not
by the weakness of the defendant's title.   Had on the sale
five of the forty acres been excepted from the premises
sold, an exception which would have been valid, and
nevertheless the plaintiff had been in possession and occu-
pation of the five acres along with the rest of the tract, no
one could have disturbed that possession except by virtue
of a paramount right.   As against a trespasser, it would
be immaterial that the plaintiff had no title to the
land.   (*Jackson* v. *Harder*, 4 Johns. 202, *Palmer* v.
*Aldridge*, 16 Barb. 131; 1 Hilliard on Torts, 518.)   In
*Hornbeck* v. *Westbrook* (*supra*) the deed to the plaintiff
contained a proviso that the inhabitants of the town of
Rochester should be allowed to cut and carry away wood,
etc., from any part of the lands not fenced.   The plain-
tiff sued the defendant, one of the townsmen, in trespass
for having exercised this privilege.   The proviso was
held void and a recovery by the plaintiff sustained.

It is urged that the grantee under a deed containing a
reservation or exception is estopped from denying the
efficacy of such exception or reservation.   If that were
the law there would be nothing left of the doctrine that
a reservation to a stranger is inoperative and that a
stranger takes nothing under it.   Moreover, in this case
the defendant has no equity on which to found the claim
of an estoppel.   If the law gave validity and efficacy to
an exception in favor of a stranger it would not help the
defendant's position.   Such exception in favor of a stranger
could be made only by the owner of the property.   Here
the exception was made by the mortgagee who under
our law has no estate in the mortgaged property, but
merely a lien thereon.   He could sell the property but for
one purpose, to realize the mortgage debt, and but in one
manner, that prescribed by the statute.   He was not
obliged to sell all the property, but what was not sold
remained the property of the mortgagor, and the mort-
gagee could no more give it away to third parties than

could any stranger.   Neither the defendant nor its predecessors in title paid anything for the right it asserts, and that right was received from a person who had no power, real or apparent, to grant it.

The case of *Sherman* v. *Willett* (42 N. Y. 146), upon which great stress is laid by the respondent, is in point neither in its facts nor in the principle involved.   There the plaintiff recovered against the purchaser under a foreclosure by advertisement for a crop of rye reserved and excepted from the sale.   But the plaintiff had prior to the sale purchased the growing crop from the administrator of the equity of redemption, the administrator being also the owner of the mortgage foreclosed.   Under the statute the growing crop was personalty except as against a person who should acquire it by foreclosure of the mortgage.   Therefore, the effect of the exception was not to confer title upon the plaintiff, but merely to prevent the title already held by him from being defeated.

The judgment should be reversed and a new trial ordered, costs to abide the event.

Haight, Vann, Willard Bartlett, Hiscock, Chase and Collin, JJ., concur.

Judgment reversed, etc.